UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11643-RWZ

RICHARD TOLBERT

v.

HAROLD W. CLARKE, et al.

MEMORANDUM AND ORDER

ZOBEL, D.J.

For the reasons stated below, the Court dismisses this action.

I. **Background**

On September 9, 2010, Richard Tolbert, who is now incarcerated at the Souza-Baranowski Correctional Center ("SBCC"), filed a self-prepared complaint under 42 U.S.C. § 1983 in which he complained of conditions at the Old Colony Correctional Center ("OCCC"), where he was housed at the time. On October 7, 2010, Tolbert filed a "Supplemental Complaint" (#6) in which he complained of the overall lack of quality of mental health treatment at the prison, a regulation prohibiting prisoners from having razors, and the receipt of a false disciplinary report. On December 8, 2010, Tolbert filed an amended complaint (#23), in which he alleged racism at OCCC in the hiring of mental health staff and in inmate cell assignments. Tolbert also complained about certain aspects of inmate medical care at OCCC.

On February 28, 2011, the Court ordered Tolbert to file a second amended complaint. The Court explained that a complaint consists of a single operative

document, and that neither the Court nor the defendants were required to piece together the original, supplemental, and amended complaints to determine what claims Tolbert was bringing. The Court also explained that Tolbert's pleadings did not meet the notice pleading requirements of Fed. R. Civ. P. 8(a) because his allegations were too vague and because he referred to the defendants collectively, making it impossible to tell which defendant was involved in each incident of alleged misconduct.

On March 9, 2011, Tolbert filed a second amended complaint ("SAC") (#42). The second amended complaint consists of a preliminary statement, followed by twenty-two numbered paragraphs[1], each containing a "cause of action," and a prayer for relief. The plaintiff's allegations, which concern alleged events at OCCC and SBCC, are set forth and discussed below. The defendants in the second amended complaint are Nancy Dizio, OCCC Superintendent Karin Bergeron, OCCC Director of Classification Carol Lawton, SBCC Superintendent Thomas Dickhaut, and M.H.M Services (which provides mental health services to inmates).

After screening the second amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court concludes that the plaintiff has failed to state a claim upon which relief may be granted. The second amended complaint is dismissed.

**II.　Discussion**

**A.  First and Second Causes of Action**

In the First Cause of Action, Tolbert alleges that Dickhaut placed him in segregated confinement for an indefinite amount of time without first providing Tolbert

---

[1]The paragraphs are numbered 1-16 and 18-23.

due process. Tolbert alleges that this action was in violation of 103 C.M.R. 420. See SAC ¶ 1. In the Second Cause of Action, he alleges that Title 103 of the Massachusetts Code of Regulations contains mandatory language and therefore creates a liberty interest. See id. ¶ 2. He implies that his right to due process was violated when he was held in the special management unit for 21 days before he received a hearing on a false disciplinary report.

The Court infers from these allegations and from the first and second pages of exhibits attached to the second amended complaint that the plaintiff is referring to a single incident in these causes of action. The exhibits indicate that Tolbert received a disciplinary report for conduct that allegedly occurred on February 7, 2011 at SBCC, and that he pled guilty to four of the five offenses. Tolbert wrote on the exhibit that he was placed in "indefinite" administrative segregation for three weeks.

The Due Process Clause of the Fourteenth Amendment "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). An inmate does not, however, have a liberty interest in avoiding a particular condition of confinement unless the condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 222-23 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)), even if state prison management procedures prohibit the alleged misconduct in question, see Sandin, 515 U.S. at 482-84.

In Sandin, for example, the Court held that a prisoner did not have a liberty interest in avoiding disciplinary segregation. See Sandin, 515 U.S. at 485-86. The

Court explained that the disciplinary segregation did not impose an atypical, significant departure from the basic conditions of the inmate's sentence. See id. Similarly, in Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir. 1996), the First Circuit applied Sandin to hold that an inmate who had been participating in a work release program did not have a liberty interest in avoiding transfer to a higher security facility. Acknowledging that "there is a considerable difference between the freedoms [the inmate] enjoyed when he was in work release status and the conditions of incarceration at a medium security facility," the First Circuit nonetheless concluded that the transfer did not constitute an atypical hardship as compared to the ordinary incidents of prison life. Id. at 1160. The court reasoned that the transfer did not affect the duration of his sentence or subject the prisoner to "conditions . . . different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion." Id.

Applying Sandin to present action, the Court cannot infer from any of the plaintiff's allegations that being held in segregation for 21 days pending a disciplinary proceeding "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 545 U.S. at 484. Therefore, Tolbert did not have a liberty interest in avoiding segregation for the "indefinite" 21-day period, and no process was due to him prior to placement in segregation.

**B.    Third and Fourth Causes of Action**

Although the Third and Fourth Causes of Action are not entirely clear, it appears that Tolbert is challenging Dickhaut's alleged policy of storing an inmate's personal "cosmetic" items while the inmate is in segregation. See SAC ¶¶ 3, 4. He alleges that

4

the policy is "arbitrary & punitive–example if one is indigent and cannot repurchase cosmetics than he is basically out of luck." Id. ¶ 4.

As a threshold matter, the plaintiff fails to state a claim because he does not allege any injury to <u>himself</u> as a result of the policy. He does not have standing to bring claims for the injuries suffered by others. See <u>Pagán v. Calderón</u>, 448 F.3d 16, 27 (1st Cir. 2006).[2] Even if the Court were to infer that Tolbert had been affected by the policy, he has not met the notice pleading requirements of Fed. R. Civ. P. 8(a). He did not allege what personal items were taken from him, when they were taken from him, and for what period of time, how he was adversely affected by separation from his property, and whether the property was ever returned to him.

Further, prison officials do not violate the Eighth Amendment if they refuse to provide basic hygienic items such as soap, toothpaste, and cleaning supplies, if the inmate is able to purchase these items. See, e.g., <u>Garcia v. Kimmell</u>, 381 Fed. Appx. 211, 216-17 (3d Cir. 2010) (prison officials not in violation of Eighth Amendment for refusing to provide free soap where balance of inmate's institutional account exceeded $10.00); <u>Gross v. Koury</u>, 78 Fed. Appx. 690, 695 (10th Cir. 2003) (where inmate had "simply made a personal choice between spending his funds on hygiene products or unspecified litigation costs," he failed to state an Eighth Amendment violation despite allegations that prison officials refused to provide him hygiene products at no cost to him). Although Tolbert alleges that an indigent prisoner would be "out of luck" under Dickhaut's alleged policy, he does not allege that he was indigent.

---

[2]As noted below, in many of the causes of action, Tolbert does not claim that the defendants' allegedly wrongful conduct resulted in any injury to him personally.

Finally, a temporary separation from his personal property does not deprive an inmate of a liberty or property interest. See Ra-o-kel-ly v. Johnson, 2011 WL 677234, at *1 (9th Cir. Feb. 25, 2011) (slip copy) (property restrictions in temporary administrative detention did not implicate liberty or property interest). In the case of lost or stolen property, sufficient due process is afforded an inmate if he has access to an adequate post-deprivation remedy. See Hadfield v. McDonough, 407 F.3d 11, 19 (1st Cir. 2005) ("When a deprivation of property interest is occasioned by random and unauthorized conduct by state officials, . . . the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state." (quoting O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000))).

### C. Fifth Cause of Action

The plaintiff claims in his Fifth Cause of Action that Bergeron "knew well in advance Old Colony Corr. Center, was changing it's [sic] mission policy to mental health and was negligent in preparation." SAC ¶ 5.

This cause of action fails to state a claim for relief. Tolbert has not alleged with adequate specificity any alleged misconduct by Bergeron, nor that he was injured by Bergeron's actions. Further, negligent conduct cannot serve as the basis of a claim for a violation of the Eighth Amendment. Where a prisoner claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated because he did not receive proper medical care, he must prove that the defendant's actions amounted to "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "Moreover, inadvertent failures to provide medical care, even if negligent, do not sink to the level of deliberate indifference." Braga v. Hodgson, 605

F.3d 58, 61 (1st Cir. 2010) (quoting DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)).  To plead deliberate indifference, a plaintiff must allege facts from which the Court may reasonably infer "that the defendant[] had a culpable state of mind and intended wantonly to inflict pain."  Id. (quoting DesRosiers, 949 F.2d at 19).

        **D.**      **Sixth, Sixteenth, and Twentieth Causes of Action**

In the Sixth Cause of Action, Tolbert makes the one-sentence allegation that defendants Bergeron, Lawton, and M.H.M. "engaged in a racist systematic program to send black inmates to higher custody levels–and the failure to hire black clinicians."  SAC ¶ 6.  In Sixteenth Cause of Action, he complains that there are not any African-Americans employed on the mental health services staff of MCI Concord, OCCC or SBCC.  See id. ¶ 16.  In the Twentieth Cause of Action, he alleges that black inmates at OCCC that assaulted staff were sent to higher security facilities than white inmates who committed the same disciplinary infractions.  The plaintiff claims that Bergeron, Lawton, and M.H.M. condoned this practice.  See id. ¶ 20.

In regards to the allegation that Bergeron, Lawton, and M.H.M. sent African-American inmates to higher security facilities based on their race, none of these causes of action assert any claim that this alleged conduct has adversely affected the plaintiff.  To the extent it may be inferred from the allegation that he was among the African-American inmates adversely affected by this policy, he has not met the notice pleading requirements of Fed. R. Civ. P. 8(a).

The claims of discrimination in the hiring of medical staff fail because the plaintiff does not have a right to have clinicians of a particular race treat him or be on the prison medical staff, and thus has no standing.

7

### E. Seventh Cause of Action

In the Seventh Cause of Action, Tolbert alleges that Bergeron, "in her tardiness, negligence provided corrections staff with a memorandum with their chec[k]." SAC ¶ 7 (last word illegible). This allegation is incomprehensible, and the Court cannot discern and claim for relief therein.

### F. Eighth and Twenty-Third Causes of Action

In the Eighth Cause of Action, Tolbert alleges, "Jim Crow cell assignments is the norm–and that I was personal[ly] told I had to move out of my cell–because a "white" inmate was moving in and we could not be in the same cell together!" SAC ¶ 8. In the Twenty-Third Cause of Action, Tolbert alleges that twenty-three cell assignments at OCCC were race-based, and that medical staff was negligent because the mental health of the inmates was not taken into in the assignment process. See id. ¶ 23.

The Eighth and Twenty-Thirds Causes of Action do not meet the notice pleading requirements of Fed. R. Civ. P. 8(a). Tolbert has not alleged when the misconduct occurred and who directly participated in the conduct.[3] In the Twenty-Third Cause of Action, he has not even alleged that he was injured by the conduct in question. Further, negligent conduct cannot give rise to an Eighth Amendment claim. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle, 429 U.S. at 105.

---

[3]Further, although race-based classifications in prison are subject to strict scrutiny, see Johnson v. California, 543 U.S. 499, 509 (2005), "racial segregation that results from policies based on a 'bona fide, colorblind concern' for prisoner safety does not violate the Equal Protection Clause," Jones v. Walker, 358 Fed. Appx. 708, 711 (7th Cir. 2009) (quoting Harris v. Greer, 750 F.2d 617, 619 (7th Cir. 1984)).

### G. Ninth and Tenth Causes of Action

In the Ninth Cause of Action, Tolbert alleges that Bergeron has a blanket policy of prohibiting all inmates–not just inmates who pose a risk to themselves–from possessing razors. See SAC ¶ 9. Tolbert alleges in the Tenth Cause of Action that shavers provided by staff were not adequately cleaned. See id. ¶ 10. These claims fail to state an Eighth Amendment violation because Tolbert does not allege a condition of confinement which deprives him of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

### H. Eleventh, Eighteenth, Twenty-First, and Twenty-Second Causes of Action

In the Eleventh Cause of Action, Tolbert alleges, "even though there exisit an appeal process with respect to classification plaintiff was sent to maximum custody, and has yet to recieve the results of said appeal process!" SAC ¶ 11 (as in original). In the Eighteenth Cause of Action, he alleges that he was subject to "due process double jeopardy" because Dickhaut placed Tolbert on "6 months non-contact visit" without a right of appeal, even though Tolbert was awaiting a hearing on a disciplinary report for the very violation for which Dickhaut imposed the sanction. Id. ¶ 18. In the Twenty-First Cause of Action, he complains that when one cellmate commits a rules violation, both inmates are placed in administrative segregation pending a disciplinary hearing. See id. ¶ 21. In the Twenty-Second Cause of Action, he asserts that he was subject to this policy when his cellmate refused a cell assignment. See id. ¶ 22.

The Court assumes that Tolbert is alleging due process violations. However, any due process claim fails when there are no allegations that the misconduct "imposes

9

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 545 U.S. at 484.

The plaintiff's claim that the visitation restrictions Dickhaut imposed subjected Tolbert to "double jeopardy," fails to state a claim for relief. The Double Jeopardy Clause provides that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause "protects only against the imposition of multiple criminal punishments for the same offense." Hudson v. United States, 522 U.S. 93, 99 (1997). It does not "prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment." Id. at 98-99 (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 549 (1943)). Certain conditions of incarceration–such as loss of visitation rights or placement in segregation–are not additional punishments for the original criminal sentence. See, e.g., Stiver v. Meko, 130 F.3d 574, 578-79 (3d Cir. 1997) (ineligibility for early release because of conviction for violent offenses did not subject inmate to multiple punishments for a single offense because it did not increase criminal sentence beyond that originally imposed).

**I.   Twelfth Cause of Action**

In the Twelfth Cause of Action, Tolbert alleges that he was diagnosed with post-traumatic stress disorder in 1987, and that his condition was "compounded" when he returned to Massachusetts and discovered that his mother and sister had died. See SAC ¶ 12. As he does not allege any misconduct in this cause of action, he has failed to state a claim for relief.

### J. Thirteenth and Fourteenth Causes of Action

In the Thirteenth Cause of Action, Tolbert alleges that M.H.M staff changes levels and times of administration of medications to inmates without notice. See SAC ¶ 13. In the Fourteenth Cause of Action, he complains that M.H.M. staff tampered with mental health records to protect a particular clinician and "in retaliation for filing administrative complaints." Id. ¶ 14. These fail because the plaintiff has not alleged that he was injured by this conduct, his allegations do not provide the defendants adequate notice of the claims, and the Court cannot infer from the allegations that M.H.M. or its staff was deliberately indifferent to Tolbert's serious medical needs.

### K. Fifteenth Cause of Action

In the Fifteenth Cause of Action, Tolbert alleges, "Once again after 7 request to see mental health clinician and being told that I would be seen <21> days have elapsed and still have seen no-one!" SAC ¶ 15. Because Tolbert has not provided adequate notice of when the requests were made and the names of the persons responsible for the refusals, the claim fails. Further, the allegations do not even suggest that any staff member was deliberately indifferent to Tolbert's serious medical needs when Tolbert has not identified the condition which prompted his requests or any injury he suffered by the failure of staff to provide him access to a mental health clinician.

### L. Nineteenth Cause of Action

In the Nineteenth Cause of Action, Tolbert alleges, "Dickhaut sending me my administrative complaint back to me with a letter deeming me as threat to security was vindictive and retaliatory!" SAC ¶ 19. He has not identified the administrative complaint

in question or when the alleged events occurred. In addition, he has set forth no facts from which the Court may reasonably infer that Dickhaut's alleged retaliatory adverse act was more than "de minimis" or "would chill or silence a person of ordinary firmness from future First Amendment activities." Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006).

## III. Conclusion

Accordingly, this action is DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. All pending motions are DENIED AS MOOT.


SO ORDERED.


| | |
|---|---|
| 6/21/2011 | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |